# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| **TRAXCELL TECHNOLOGIES, LLC.,**   )<br>    **Plaintiff,**   )<br>   )<br>**v.**   )<br>   )<br>   )<br>**VERIZON WIRELESS PERSONAL**   )<br>**COMMUNICATIONS,**   )<br>    **Defendant.**   )  | **Civil Action No. 6:20-cv-01175-ADA**<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S SUR-REPLY CLAIM CONSTRUCTION BRIEF

i

## TABLE OF CONTENTS

I. VERIZON AND ERICSSON WAIVE PROPOSING ANY CONSTRUCTION FOR THE COMPUTER AND LOCATION TERMS ...................... Error! Bookmark not defined.

II. DISPUTED CLAIM TERMS ................................................................................................1

    A. '135 / '517 Patents: "Performance Data" ................... Error! Bookmark not defined.

    B. '147 Patent ..................................................................................................................3

        1. "At least one processor outside the network" .......................................................3

        2. A second processor ................................................................................................6

        3. Preference Flags ....................................................................................................8

        4. Acquire the information indicative of a location ..................................................8

III. CONCLUSION .....................................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

*Arthrex*, 2016 U.S. Dist. LEXIS 105750 ................................................................... 9

*3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315 (Fed. Cir. 2013) ........ 3

*Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319 (Fed. Cir. 2009) ........................ 3

*N. Telecom Ltd.*, 215 F.3d at 1291 ............................................................................ 9

*Thorner*, 669 F.3d at 1366 ........................................................................................ 3

T*raxcell Techs., LLC v. Sprint Communs. Co. LP*, Nos. 2020-1852, 2020-1854, 2021 U.S. App. LEXIS 30422 (Fed. Cir. Oct. 12, 2021) ........................................ 1

I. **VERIZON AND ERICSSON WAIVE PROPOSING ANY CONSTRUCTION FOR THE COMPUTER AND LOCATION TERMS**

Verizon and Ericsson have waived proposing any construction for the terms *computer/first computer* and any term with the word *location*. Traxcell notes that in its opening brief the declaration of Mitch Harris was filed with the three exhibits as the same document. In an abundance of caution, Traxcell refiles the declaration and exhibits as separate documents. Traxcell, to address prosecution issues found in its first wave of patent litigation,[1] filed prosecution history revocations in each of the '135 Patent,[2] the '517 Patent,[3] and the '147 Patent.[4]

By failing to address these terms, Verizon and Ericsson have waived applying any construction later in the litigation. As such the terms *computer/first computer* and any term with the word *location* need no construction. It would be improper to apply any prior construction to these terms in light of the revocations filed and Defendants have waived challenging the revocations.

II. **DISPUTED CLAIM TERMS**

A. **'135 / '517 Patents: "Performance Data"**

Defendants proffered construction improperly reads the prosecution history. Nowhere in the prosecution history is there a disclaimer of performance data determined by the wireless device.[5] Rather, Reed differentiated the claimed invention by providing that the cited art, *Anderson*, required the mobile station (wireless device) to determine the CIR (performance data)

---

[1] T*raxcell Techs., LLC v. Sprint Communs. Co. LP*, Nos. 2020-1852, 2020-1854, 2021 U.S. App. LEXIS 30422, at *13, *17-18 (Fed. Cir. Oct. 12, 2021) (The Federal Circuit found disclaimer applied to the terms including *location* at *13 and disclaimer applied to the terms *computer* and *first computer* at *17-18).
[2] Ex. A, Prosecution History Revocation for the '517 Patent.
[3] Ex. B, Prosecution History Revocation for the '135 Patent.
[4] Ex. C, Prosecution History Revocation for the '147 Patent.
[5] Doc. No. 43-4 at 22-28/67.

1

by a special detector in the mobile station. *Anderson* then transmits a power control message on a dedicated physical control channel to the base station:

> The Applicants note that *Andersson* shows a method where the "carrier-to-interference ratio" (CIR) is detected by *Andersson's* Mobile Station (Fig. #3, #100) (i.e., not at the base station). The CIR is determined by *Andersson's* mobile station, and then transmitted via a "power control message on a dedicated physical control channel." See *Andersson's* Figure 5.
>
> In the Office Action, at Section 3, the Examiner alleges that, *Andersson* discloses "a first computer programmed to perform the steps of referencing performance of said at least one wireless device". However, this is not correct. *Andersson* shows a mobile station (a second computer) which contains a "carrier-to-interference ration detector" contained within the mobile station itself (Fig. 3, #100). *Andersson* teaches away from the possibility of the CIR being determined by the first computer. In *Andersson's* world the CIR must be detected by *Andersson's* mobile station, and then transmitted via a special dedicated signal to the *Andersson's* specially equipped base station. *Andersson's* base station must be equipped with a special transceiver (70) outfitted to send and receive *Andersson's* dedicated "power control message on a dedicated physical control channel". [6]

Nowhere does Reed state that performance data cannot be measured at the wireless device, rather Reed states that *Anderson* cannot determine performance data at the base station. Thus, Reed was explaining why *Anderson* did not disclose elements of the claimed invention. There was no disclaimer.

The law is clear, to disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender.[7] "Where an applicant's statements are amenable to multiple reasonable interpretations,

---

[6] Doc. No. 43-4 at 26/67.
[7] *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.").

they cannot be deemed clear and unmistakable."[8] Here, as Reed never provided that performance data could not be determined at the wireless, there was no disclaimer. The only 'clear and unmistakable' language is that *Anderson* requires that the performance data is determined at the mobile station (wireless device). Reed, the claimed invention, can determine the performance data at the base station.[9] **"Reed's first computer is able to reference this performance data by monitoring the radio tower**."[10] There is no limitation of where the performance data was generated.

> This is further confirmed by statements explaining the cited excerpts:
>
> Andersson does not consider monitoring the base station for "carrier-to-inference ratio" (CIR), or any other type of performance data related to his mobile station. **In Andersson's world, the CIR must be determined by his mobile station and then transmitted to the base station. Andersson's first computer cannot reference the performance data of a wireless device, without receiving said performance date from his mobile station MS1. Reed does not require the extra steps or equipment required by Andersson, to send and receive performance data between the base station and the wireless device.**[11]

There is no limitation as to where the performance data is generated.

B. '147 Patent

1. "At least one processor outside the network"

---

[8] *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).
[9] Doc. No. 43-4 at 26/67.
[10] Doc. No. 43-4 at 23/67. (emphasis added).
[11] Doc. No. 43-4 at 28/67 (emphasis added).

Defendant's position that the term is indefinite belies logic considering that they identify what they contend comprises the network in this response.[12] Thus, anything outside of what they define as the network would be 'outside the network.' There can be no doubt that the specification specifically provides examples of both a Directional Assistance Network (DAN) and a second processor located outside the network, in addition to what Plaintiff provided in its Opening Brief.

The '147 patent provides sufficient detail for one of ordinary skill in the art in how to place a processor outside the network:

> or IP addresses)
> In alternate embodiments where the DAN 8100 is located at locations other than a wireless network, additional equipment will need to be located at a wireless switch. The DAN linking software 8300 allows remote queries of the wireless switch. The DAN linking software 8300 connects to the e-mobility services 144 that links to the MTX 130. The DAN linking software 8300 includes the interim linking software 8515. The interim linking software 8515 negotiates and retrieves data from the MTX 130 or the BSC 206 components of a wireless switch. In addition, the DAN linking software 8300 includes packet routing software/hardware 8520 that allows packets to be passed from wireless devices (the WAP/e-mobility connections) to the DAN 8100 that is remotely located. The DAN linking software 8300 also includes the DAN data query software 8525 to manage the methods used to query the local wireless networks hardware/software.[13]

Accordingly, when the DAN 8100 is located at locations outside the wireless network, additional equipment may be necessary at the wireless switch. Further,

---

[12] Doc. No. 48 at 4-10.
[13] Doc. No. 41-3 at 114:45-61.

the DAN linking software 8300 (from Figure 83). Defendants' assertion there is no disclosure of a processor outside the network is simply wrong, as Figure 83 and its description show.



Components of the DAN include a processor:

---
[14] Doc. No. 41-3 at Figure 83 (highlighting added).

> Directional Assistance Network (DAN)
> The Dan Comprises:
>   <mark>A COMPUTER SYSTEM HARDWARE/SOFTWARE</mark>
>   <mark>AN OPERATING SYSTEM</mark>
>   <mark>A DIRECTIONAL ASSISTANCE OPERATING PRO-
>     GRAM</mark>
>   AN AUTOMATED TELEPHONE HARDWARE/SOFT-
>     WARE
>   A VOICE RECOGNITION HARDWARE/SOFTWARE
>   TRAFFIC MONITORING AND ROUTE PLANNING
>     HARDWARE/SOFTWARE AND MAPPING HARD-
>     WARE/SOFTWARE [15]
>
>   ...
>
>   A WIRELESS DEVICE USER LOCATION DATABASE
>     AND DATABASE LOGIC CENTER HARDWARE/
>     SOFTWARE (OPTIONAL IF LOCATION DATA IS
>     OBTAINED FROM AN OUTSIDE DATABASE,
>     E-MOBILITY, ETC.)
>   <mark>A PSTN USER LOCATION DATABASE AND DATA-</mark>
>     BASE LOGIC CENTER HARDWARE/SOFTWARE
>     (OPTIONAL IF LOCATION DATA IS OBTAINED
>     FROM AN OUTSIDE DATABASE, E-MOBILITY,
>     ETC.) [16]

Thus, the DAN comprises a computer system with hardware (a processor) and associated operating system. Additionally, as shown in the copied portions, in various embodiments when the DAN is outside of the network a user location database and database logic center has a processor. Therefore, the '147 patent provides ample disclosure of a processor outside the network.

### 2. A second processor

Defendants misstate Traxcell's position as Traxcell does particularly dispute that the second processor cannot be in the wireless device, as it can. In fact, Traxcell particularly recognized that a second processor (or second computer) could be in a wireless device:

---

[15] Doc. No. 41-3 at 99:56-67.
[16] Doc. No. 41-3 at 100:1-10.

> In the Office Action, at Section 3, the Examiner alleges that, *Andersson* discloses "a first computer programmed to perform the steps of referencing performance of said at least one wireless device". However, this is not correct. *Andersson* shows a mobile station (a second computer) which contains a "carrier-to-interference ration detector" [17]

A second computer is a second processor and thus can be located in the wireless device.

Defendants' short cite of the claim language from then '388 patent and the '147 patent fails to illustrate that the '147 patent claimed the *second processor* as a separate element, as Traxcell illustrated in its Opening Brief.[18] The '388 patent, on the other hand, specifically states that the second processor is in the wireless network:

> at least one second radio-frequency transceiver and an associated at least one second antenna of the wireless [19]
>
> communications network to which the second radio-frequency transceiver is coupled; and [20]

Thus, the claim requires that the second processor be in the wireless network in the '388 patent but the same cannot be said for the '147 patent.

Defendants' reference to the claim language containing the word *coupled* does not require the second processor be in the wireless network. The term coupled is a common and ordinary term that does not require a physical connection. Coupled simply means linked or paired. In a wireless

---

[17] Doc. No. 43-4 at 26/67 (highlighting added).
[18] Doc. No. 46 at 11-13.
[19] Ex. C, U.S. pat. No. 9,549,388 at 128:66-67.
[20] Ex. C, U.S. pat. No. 9,549,388 at 129:1-2.

network, a second processor can be linked or paired (coupled) to at least one second radio-frequency transceiver without being in the wireless network:

> 1. A wireless communications system including:
>
> a first radio-frequency transceiver within a wireless mobile communications device ...;
> a first processor within the wireless mobile communications device coupled to the at least one first radio-frequency transceiver ...;
> at least one second radio-frequency transceiver and an associated at least one second antenna of the wireless communications network to which the second radio-frequency transceiver is coupled;
> and a second processor coupled to the at least one second radio-frequency transceiver programmed to ....[21]

Defendants point to no portion of the specification or prosecution history that requires a second processor to be in the wireless network and therefore, the plain an ordinary meaning should control, needing no construction.

### 3. Preference Flags

The parties do not dispute this term.

### 4. Acquire the information indicative of a location

Defendants' assertion that the second processor uses the preference flags to determine whether to acquire or not acquire the information is mistaken.[22] The claim language particularly specifies that:

> a second processor coupled to the at least one second radio-frequency transceiver programmed to *acquire the information indicative of a location* of the wireless mobile communications device, wherein the **second processor selectively acquires the information indicative of a location of the wireless mobile communications device dependent on the setting of preference flags**, wherein the second processor acquires the information indicative of a location of the wireless mobile communications device if the preference flags are set to a state that permits tracking of the wireless mobile communications device, and

---

[21] Doc. No.41-3 at 127:63-128:50.
[22] Doc. No. 48 at 14-15.

8

> wherein the second processor does not acquire the information indicative of the location of the wireless mobile communications device if the preference flags are set to a state that prohibits tracking of the wireless mobile communications device.[23]

As can be seen from the plain language of the claims, the second processor does not use the preference flags, rather a setting of the preference flags allows the second processor to acquire location. Thus, Defendant's proposal is incorrect and would render the claim confusing. There is simply no reason to change the words used by the patentee. The words need no construction.[24]

### III.  CONCLUSION

Plaintiff respectfully requests the Court adopt its constructions.

Respectfully submitted,

Ramey & Schwaller, LLP

*[signature]*

William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
Donald Hopkins Mahoney, III
Texas Bar No. 24046336
tmahoney@rameyfirm.com
5020 Montrose Blvd., Ste. 800
Houston, Texas 77006
(713)426-3923
(832)900-4941 (fax)

**Attorneys for Traxcell Technologies, LLC**

---

[23] Doc. No. 41-3 at 128:34-50 (emphasis added).
[24] *See, e.g., N. Telecom Ltd.*, 215 F.3d at 1291; *Arthrex*, 2016 U.S. Dist. LEXIS 105750, at **106, 108, 127 173, 174.

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing Notice of Acknowledgement has been delivered to all parties registered to receive court notices via the Court's ECF/CM system on December 28, 2021.

                                      <u>William P. Ramey, III</u>
                                      William P. Ramey, III