## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **TRAXCELL TECHNOLOGIES, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **Civil Action No. 6:20-cv-01175-ADA** |
| **-v-** | § | |
| | § | |
| **CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, and ERICSSON INC.,** | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM IN SUPPORT OF CLAIM CONSTRUCTION ORDER

On March 8, 2022, the Court entered a Claim Construction Order (D.I. 72) construing the terms of U.S. Patent No. 10,701,517 ("the '517 patent"); U.S. Patent No. 10,743,135 ("the '135 patent"); and U.S. 10,820,147 ("the '147 patent"). The Court enters this memorandum in support of that order.

## I.      LEGAL STANDARD

### A.  General principles

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (internal quotation omitted). The plain-and-ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain-and-ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). The Federal Circuit has counseled that "[t]he standards for finding lexicography and disavowal are exacting." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "'clearly express an intent' to [define] the term." *Thorner,* 669 F.3d at 1365.

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "[D]istinguishing the claimed invention over the prior art, an applicant is indicating what a claim does not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Id.* at 1325–26. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

A construction of "plain and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). In that case, the Court must describe what the plain-and-ordinary meaning is. *Id.*

"Although the specification may aid the court in interpreting the meaning of disputed claim language . . ., particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318. Expert testimony may also be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

## B.  Indefiniteness

"[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application was filed. *Id.* at 911.

In the context of a claim governed by § 112, ¶ 6, the claim is indefinite if the claim fails to disclose adequate corresponding structure to perform the claimed functions. *Williamson*, 792 F.3d at 1351–52. The disclosure is inadequate when one of ordinary skill in the art "would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." *Id.* at 1352. Computer-implemented means-plus-function claims are indefinite unless the specification discloses an algorithm to perform the function associated with the limitation. *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1319 (Fed. Cir. 2012).

## II.     CLAIM CONSTRUCTION

1) performance data – '135/'517 Patents

| Terms | Traxcell's Proposal | Verizon/Ericsson's Proposal | Court's Construction |
|---|---|---|---|
| performance data<br><br>'135/'517 Patent | Plain and ordinary meaning. | performance data that is not determined by the wireless communications device | performance data that is not determined by the wireless communications device |

During prosecution of a parent patent to the '135 and '517 patents, the patentee distinguished the prior art because the claimed invention "references performance of a wireless device without receiving the actual performance data from the wireless device itself." D.I. 43-4 at 22 (prosecution history of U.S. Patent No. 8,977,284). The patentee distinguished the claimed invention from the prior art by arguing the performance data in the prior art is detected at the wireless communication device "NOT AT THE BASE STATION". *Id.* (all capitals in original). *Id.* The patentee also made several other clear statements distinguishing the claimed invention because performance data in the prior art was determined by the wireless device (i.e., mobile station). *Id.* at 26.

The Court finds these prosecution statements to distinguish the prior art clearly disclaim devices in which performance data is detected by a wireless communication device. Although the above prosecution disclaimers were made during prosecution of a parent application, the

4

disclaimers apply equally to the asserted children patents, which are continuations of that parent application.  *See Elkay v. Ebco*, 192 F.3d 973, 980 (Fed. Cir. 1999); *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1334–34 (Fed. Cir. 2003) (holding that a patent's status as a continuation "does not shield it from narrowing disclaimers made during the prosecution of a parent application").

Traxcell argues it rescinded the disclaimers in the parent application by filing "prosecution history revocations."  D.I. 46 at 5-7.  Traxcell is correct that "a disclaimer made during prosecution can be rescinded."  *Hakim v. Cannon Avent Group, PLC*, 470 F.3d 1313, 1318 (Fed. Cir. 2007).  To recapture disclaimed scope, however, the rescission must be sufficiently clear to inform the Patent Office which disclaimers are being rescinded.  *See id.*  Traxcell's prosecution history rescissions did not sufficiently inform the Patent Office that it was rescinding arguments related to where performance data is determined.   The rescission documents reference prosecution statements related to (1) requirements for computers in wireless devices and (2) corrective actions for radio towers without grid patterns; but they do not mention or reference performance data or where it is determined.  *See* D.I. 46-1 Appx. 1-3.  The Court finds Traxcell's recissions lack sufficient clarity to inform the Patent Office that it was rescinding arguments relate to performance data.  The Court also finds Traxcell's general statements rescinding "any prior disclaimers or limitations that have been express or implied" lack sufficient clarity.  *See id.*

Traxcell also argues it is common to construe terms differently in different patents, but this fails to overcome the prosecution disclaimers.  "The patentee made a clear and unmistakable disclaimer of claim scope in its prosecution of the parent [patent], and we presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning."  *Omega Eng'g*, 334 F.3d at 1334.

For the above reasons, the Court construes "performance data" consistent with the prosecution disclaimers as "performance data that is not determined by the wireless communications device."

2) at least one other processor outside the network – '147 Patent

| Terms | Traxcell's Proposal | Verizon/Ericsson's Proposal | Court's Construction |
|-------|--------------------|-----------------------------|--------------------|
| at least one other processor outside the network<br><br>'147 Patent | Plain and ordinary meaning. | Indefinite. | Plain and ordinary meaning. |

Verizon argues this term is indefinite because the patent does not provide criteria for determining whether a processor is outside a wireless communications network.[1]  D.I. 43 at 7-10. Verizon argues the '147 Patent discloses many components including other networks connected to the core wireless communications network (the base station and base station controller), such as a public telephone network (PSTN) and the Internet, but the patent figures label all the components and networks as part of a wireless communications network.  *See id.* (referencing Figure 10).  Thus, Verizon argues there is no basis to determine if a component is (1) part of the wireless communications network or (2) outside the wireless communications network but still connected to the network.

The Court disagrees. The '147 Patent provides several examples of components outside the wireless communications network.  For example, the patent discloses an embodiment in which a directional assistance network (DAN) is located outside (i.e., remotely) from the wireless communications network and is connected to the wireless communications network via the Internet.  *See* '147 Patent at Fig. 83; 119:60-120:7.  Similarly, Figure 84 shows the DAN located

---

[1] The parties do not dispute that "the network" refers to a "wireless communication network" or "wireless network."

outside the wireless network and connected to the wireless network via a public telephone network. *See id.* at Fig. 84; 120:15-26.

In its reply brief, Verizon argues that even if the '147 Patent does provide examples of devices outside the network, the term is indefinite because the patent does not provide objective boundaries as to what is inside and outside the network. D.I. 48 at 5-6. Notably, Verizon does not provide any evidence as to how a person of ordinary skill would understand the term when read in view of the specification. Instead, Verizon starts from the position that the patent must expressly provide objective boundaries for the claim term and puts the burden on the patentee to identify those objective boundaries. Verizon skips the critical step of establishing that a person of ordinary skill in the art would not understand the scope of "outside the network" with reasonable certainty absent express objective boundaries. Absent evidence that a person of ordinary skill in the art would not be able to understand the term with reasonable certainty in the view of the specification, the Court finds Verizon's attorney arguments do not meet its high burden to establish by clear and convincing evidence that "outside the network" is indefinite. Neither party proposed an express construction of this term, and the Court finds it should have its plain and ordinary meaning.

3) <u>a second processor – '147 Patent</u>

| Terms | Traxcell's Proposal | Verizon/Ericsson's Proposal | Court's Construction |
|---|---|---|---|
| a second processor<br><br>'147 Patent | Plain and ordinary meaning. | a processor within the wireless communications network that is separate and distinct from the wireless mobile communications device | Plain and ordinary meaning. |

The parties limit their arguments to Claim 1, so the Court construes the term with respect to Claim 1. Verizon argues "second processor" should be construed to be part of a wireless network and separate from a wireless device. D.I. 43 at 11-12. The plain language of Claim 1, however, does not expressly require the second processor to be part of the wireless network or separate from the wireless device.

Claim 1 recites a wireless mobile communication device ("wireless device") and a wireless communication network ("wireless network"). The claim expressly recites a first processor and a first transceiver "within the wireless [] device,"  and a second transceiver within "the wireless [] network." The claim also recites a second processor, but does not expressly limit where the second processor is located, only that it is "coupled to the at least one second radio-frequency transceiver." '147 Patent at 128:34-37.

Verizon argues because the claim recites the second processor is coupled to the second transceiver it must be within the wireless network like the second transceiver. D.I. 43 at 12. But merely being coupled to the transceiver does not require the processor to be part of the same device or network.

Claim 1 recites a first transceiver within a wireless device coupled to a first processor within the same wireless device. The claim further recites a second transceiver within a wireless network coupled to a second processor, but does not recite where in the processor is located. Consistent

with the claim language, the Court declines to impose a requirement on where the second processor is located.  While the wireless network is a logical location for the second processor, there is nothing in the claim that requires that location.  Nor is there anything in the claim that requires it to be separate and distinct from the mobile device as Verizon proposes.

In contrast, Claim 11 expressly recites the second processor is within the wireless network. The difference in language between the two claims supports a finding that Claim 1 does not inherently require the second processor to be within the wireless network.  *See Board of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp*., 533 F.3d 1362, 1371 (Fed. Cir. 2008) ("Different claim terms are presumed to have different meanings.").

Verizon also cites to a claim construction order of a related patent in a previous *Traxcell* case. *See Traxcell Techs., LLC v. AT&T, Inc.*, 2019 WL 1614726 at *27-28 (April 15, 2019 E.D. Tex.). In that order, the court construed language different than present in Claim 1 of the '147 Patent. With respect to the term at issue here—a second processor—the court found "is not inherently 'within the communications network.'"  *Id*. at *28.

Having rejected Verizon's argument that "a second processor" must be part of the wireless network and separate from the wireless device, the Court finds "a second processor" should be given its plain and ordinary meaning.

4)  acquire the information indicative of a location – '147 Patent

| Terms | Traxcell's Proposal | Verizon/Ericsson's Proposal | Court's Construction |
|---|---|---|---|
| acquire the information indicative of a location<br><br>'147 Patent | Plain and ordinary meaning | the "preference flags" are used by the second processor to either acquire, or not acquire, the information indicative of a location | Plain and ordinary meaning |

The Court rejects Verizon's proposed construction because it is inconsistent with the claim language and seeks to import limitations that exist elsewhere in the claim into this term.

Claim 1 recites the "preference flags" dictate whether information on the location of a wireless device is acquired or not. If the preference flags are set in one way, the location is acquired. If the preference flags are set in a different way, the location is not acquired. *See* '147 Patent at 128:34-50.

Verizon's proposed construction distorts the claim language such that the "preference flags" are used to acquire (or not acquire) the information indicative of the location. The preference flags are not used to acquire the information, but rather the states of the preference flags are used to determine whether a processor acquires the information. Verizon concedes this point. D.I. 48 at 14.

Although "preference flags" are not part of the term to be construed, Verizon argues there is a dispute between the parties whether the preference flags are used by the second processor in the acquisition of information and the Court should include that requirement in the construction of this term. *Id.* Traxcell, however, does not dispute that issue. D.I. 50 at 9 ("a setting of the preference flags allows the second processor to acquire location"). The Court agrees that other portions of the claim require the preference flags to be used to determine whether the second processor

acquires information on the location of wireless device, but the Court declines to include limitations related to other claim terms into the construction of this term.

**SIGNED** this 8th day of March, 2023.

ALAN D ALBRIGHT